IN THE ---UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILLIAM THOMPSON,**

        **Plaintiff,**

v.                                                           **Civil Action No. 5:14-cv-155**
                                                                         **(Judge Stamp)**

**JAMES HAZELWOOD, CO II,**
**KAREN PSZCZOLKOWSKI, Warden,--**
**JAMES RUBENSTEIN, Commissioner,**

        **Defendants.**

## REPORT AND RECOMMENDATION

### I.   Procedural History

On December 31, 2014, Plaintiff initiated this case by filing a *pro se* complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983. ECF No. 1. On December 2, 2014, Plaintiff was granted leave to proceed *in forma pauperis*. ECF No. 8. On December 1, 2014, Plaintiff's Motion to Amend was granted. ECF No. 17. On March 30, 2015, Plaintiff filed his amended complaint on the court-approved form. ECF No. 31. Upon a preliminary review of the amended complaint, the undersigned determined that summary dismissal was not appropriate at that time and directed the United States Marshal Service to serve the amended complaint. ECF No. 34.

On July 1, 2015, Defendants filed a Motion to Dismiss. ECF No. 40. Defendants also filed a Memorandum in Support, which included a 37 page exhibit. ECF No. 41. Because Plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on February 20, 2013. ECF No. 42. On August 3, 2015, Plaintiff filed a Response [ECF. No. 53], and on August 5, 2015, he filed an Additional Response. ECF No. 55.

## II. Contentions of the Parties

### A. The Complaint[1]

Plaintiff is currently incarcerated at Mount Olive Correctional Complex, which is located in Mount Olive, West Virginia. However, Plaintiff's complaint involves allegations surrounding the purported use of excessive force against him at the Northern Correctional Facility ("NCF") on January 30, 2013. More specifically, Plaintiff's alleges that on that date, defendant Hazelwood ("Hazelwood"), used excessive force in performing a pat down. Plaintiff alleges that during the pat down, Hazelwood brought his hands between his legs with such force that he caused actual injury requiring medical care. Plaintiff further alleges that Hazelwood has a history of using such force on others without regard to the pain and suffering he causes. Plaintiff also alleges that he has been investigated for such conduct on prior occasions but continues to pat down in such a deliberate manner that he caused actual injury to him on two other occasions. Plaintiff alleges that he was treated by the medical unit on at least three occasions and continues to suffer pain caused by the incident.

With regard to defendant Pszczolkowski (Pszczolkowski "), Plaintiff alleges that he sent a grievance form to her and explained what had happened, but she refused to assist in any way. In addition, Plaintiff alleges that Pszczolkowski failed to investigate three grievances that were filed before the January 30, 2013, incident and, had she investigated, his injuries could have been prevented. With respect to defendant Rubenstein "Rubenstein," Plaintiff alleges that he denied his grievance without any explanation. It also appears that Plaintiff alleges that both Pszczolkowski and Rubenstein were negligent which "amounts to excessive force, cruel and unusual punishment,

---

[1]This Report and Recommendation addresses the issues raised in Plaintiff's amended complaint, which was filed on September 10, 2012. (Doc. 22).

violation of state torts, liability, and negligence." ECF. No. 31-1 at 3.

Plaintiff is seeking a trial by jury and an award of compensatory damages in the amount of $50,000 and punitive damages in the amount of $25,000. Plaintiff also requests that Hazelwood be placed on a work shift that would not require him to pat down inmates except on extreme occasions. Finally, he requests that he be granted permission to receive treatment from an "outside" doctor.

### B. The Defendants' Motion to Dismiss

In their memorandum in support of their motion to dismiss, Defendants argue that Plaintiff's complaint should be dismissed for the failure to state a claim for which relief may be granted. In support of that argument, Defendants assert:

(1) Plaintiff's claims regarding defendant Hazelwood's pat downs fails to state an Eighth Amendment claim;

(2) any claim against Rubenstein based upon respondeat superior is not viable and should be dismissed; and

(3) Pszczolkowski was not employed as the warden of NCF until July 1, 2013, well after the allegations giving rise to the complaint occurred.

### C. Plaintiff's Response

In response to Defendants' Motion and the Roseboro Notice, Plaintiff notes that the Eighth Amendment imposes duties on correctional officers, including the duty and responsibility to ensure that inmates receive adequate and proper treatment. Plaintiff further notes that the Eighth Amendment prohibits treatment that would be harmful. Plaintiff reiterates that Hazelwood did, in fact, cause serious harm to him. Plaintiff again argues that Rubenstein is responsible for ensuring that prisoners incarcerated in state correctional facilities receive adequate and safe treatment from

all officers and staff personnel. Plaintiff argues that if Rubenstein had acted when he received his grievance by contacting the warden at NCF and ensured that Hazelwood was investigated and taught the proper way to do search procedures, he would not have been injured. Plaintiff also asserts that Pszczolkowski had the same option and opportunity to investigate and find out what was going on and correct the problem when she received his grievance.

### III. Standard of Review

**A. Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion, courts assume that the complaint's well-pleaded allegations are true, resolve all doubts and inferences in favor of Plaintiff and view the allegations in a light most favorable to Plaintiff. Edwards, 178 F.3d at 243-44. Only factual allegations receive

4

the presumption of truth. Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

**B. Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations

5

omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also Anderson, 477 U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

## IV. Analysis

### A. Excessive Force

Analysis of a claim for use of excessive force begins with "identification of the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments.[2] The validity of the prisoner's claim must "be judged by reference to th[is] specific constitutional standard...rather than to some generalized 'excessive force' standard." Graham, 490 U.S. at 394; see, e.g, Whitley v. Albers, 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner is to be analyzed under an Eighth Amendment standard).

To state an Eighth Amendment claim, an inmate must prove two factors: (1) objectively, the alleged punishment or act is sufficiently serious that it violates contemporary standards of decency; and (2) subjectively, the prison official must have a sufficiently culpable state of mind. Farmer v. Bennan, 511 U.S. 825, 834 (1994); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The subjective

---

[2]The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666–67 (1962).

6

component of the claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillan, 503 U.S. 1, 7 (1992). The question of whether the measure taken inflicted unnecessary and wanton pain and suffering turns on "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether a prison official acted maliciously and sadistically, the court should consider the following: "the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks omitted).

Also, the inmate must prove the corrections officer's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8.). In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). When prison official use force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated... This is true whether or not [sic] significant injury is evident." Hudson, 503 U.S. at 9. However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

As previously noted, Plaintiff's excessive force claim against Hazelwood stems from pat search in which he claims this defendant brought his hand up between Plaintiff's legs with such

7

force that he caused actual injury requiring medical care. The undersigned notes that similar claims have been raised and dismissed for not rising to the level of an Eighth Amendment claim. See, e.g., Caldwell v. Crossett, No. 9:09cv576, 2010 WL 2346337 (N.D. N.Y. May 24, 2010) (claim that corrections officer grabbed plaintiff's testicles during a pat-frisk causing serious pain around his groin area failed to allege a violation of the Eighth Amendment based upon claims of sexual abuse or excessive force); Excell v. Fisher, No. 9:08cv945, 2009 WL 3111711 (N.D. N.Y. Sept. 24, 2009) (allegations that guard grabbed and squeezed prisoner's penis during pat-frisk insufficient to state an Eighth Amendment claim).

Moreover, Defendants have provided an exhibit which indicates that an investigation was conducted regarding three separate complaints of Hazelwood's actions in performing pat downs. ECF. No. 41-1.[3] That exhibit establishes that Hazelwood began his employment with the West Virginia Department of Corrections ("WVDOC") on January 16, 2013. He was interviewed regarding the complaints on January 31, 2013. Prior to being employed by the WVDOC, Hazelwood had worked in corrections in excess of twenty years and had received training at the United States Military Police School. During the entirety of his employment from January 16 through January 30, 2013, when the incident complained of by Plaintiff occurred, he shadowed with other officers. ECF No. 41-1 at 9. Accordingly, during all times that he was on duty at the Northern Correction Facility during January 2013, he was accompanied by other officers. Id. Leonard Oates, CO II ("Oates"), was present during the pat downs of each of the three inmates, including Plaintiff, who filed

---

[3]Over the course of seven days from January 23 through January 30, 2013, three inmates complained to jail personnel about the manner in which Hazelwood conducted searches. Two of them complained about injuries and the third said he had not been injured but was touched inappropriately. ECF No. 41-1 at 8. The first incident occurred on January 23, 2013 [Id. at 32], the second incident occurred on January 28, 2013 [Id. at 31] and the third incident occurred on January 30, 2013. Id. at 3.

grievances regarding Hazelton's actions. When interviewed on February 4, 2013, by the institutional investigator, Oates noted that Hazelwood was not overly aggressive during the pat downs, did not use any profanity towards the inmates, was within the parameters of what correctional officers are taught with respect to pat downs, and did not sexually violate any of the three inmates. ECF No. 41-1 at 15–18.

Therefore, even if Plaintiff's allegations could be construed as stating an Eighth Amendment violation, aside from Plaintiff's bald assertion that Hazelwood used excessive force, there is simply nothing of record to support his allegations in light of the investigation conducted by State of West Virginia. Accordingly, Plaintiff's claims against Hazelwood should be dismissed.[4]

**B. Commissioner Rubenstein**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.[5] See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, Plaintiff's complaint makes no specific allegations against Rubenstein to

---

[4]To the extent that Plaintiff may be alleging that Hazelwood was negligent in the performance of the pat down, negligence alone does not state a claim under 42 U.S.C. § 1983. Additionally, to the extent that Plaintiff is attempting to incorporate a state claim for negligence, the same is barred because Hazelwood is a immune from negligence claims. See W.Va. Reg'l Jail & Corr. Facility Auth. V. A.B., 234 W.Va. 492, 766 S.E.2d 751 (W. Va. 2014).

[5]To the extent Plaintiff may be asserting that Rubenstein violated his constitutional rights by denying his administrative grievance, that claim is without merit. This is not the type of personal involvement required to state a § 1983 claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

indicate that he was personally involved in any alleged violation of his constitutional rights. Rather, it appears that Plaintiff has merely named Rubenstein in his official or supervisory capacities as Commissioner of the West Virginia Division of Corrections. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). In this case, Plaintiff fails to assert that a policy or custom of the prison played a part in the alleged violation of his constitutional rights.

There is no *respondeat superior* liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, 550 F.2d at 928. A supervisor may be liable under § 1983 if the following elements are established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1999). Here, Plaintiff fails to make any allegations revealing the presence of the required elements for supervisory liability. Accordingly, the undersigned recommends that Rubenstein be dismissed with prejudice from this action for Plaintiff's

failure to state a claim against him.

### 3. Warden Pszczolkowski

Plaintiff asserts a claim against Pszczolkowski based on her employment as the Warden of the Northern Correctional Facility. There appears to be no dispute that the claims raised in Plaintiff's complaint occurred in the month of January 2013. However, it would appear that Pszczolkowski, was not employed as the Warden of the NCF until July 1, 2013. ECF No. 41 at 7. In fact, the grievance filed by Plaintiff on January 30, 2013, was signed by Evelyn Seifert, Warden, on February 14, 2013. Therefore, because Plaintiff's complaint raises issues that occurred before Pszczolkowski became warden, it is clear that she could have not had any personal involvement in the events set forth in the complaint and must be dismissed as a defendant.

Furthermore, even if Plaintiff had named Seifert instead of Pszczolkowski as a defendant, the allegations made against the "warden" do not state a viable claim. Like Rubenstein, it appears that Plaintiff is naming the warden under a theory of respondeat superior. However, again like Rubenstein, Plaintiff has made no allegations which would establish supervisory liability on the part of the warden at NCF with respect to Plaintiff's claims.

Finally, it is pertinent to note that the three incident report by prisoners regarding Hazelwood occurred on January 23, 2013, January 28, 2013, and January 30, 2013. All three complaining witnesses were interview on January 31, 2013, by an investigator with the State of West Virginia Military Affairs and Public Safety. In addition, Hazelwood was interviewed on January 31, 2013, and an interview was conducted on February 4 2013, of Oates, Hazelwood's "supervisor" on the dates in question. Therefore, while Plaintiff may disagree with the conclusion drawn from the investigation, it is clear that the WVDOC took his allegations seriously and investigated the same.

Accordingly, there is no indication that any employee of the WVDOC was indifferent to Plaintiff's allegations.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the Defendants' Motion to Dismiss {ECF No. 40] be **GRANTED,** and Plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: December 11, 2015

                                  /s/ Michael John Aloi
                                  MICHAEL JOHN ALOI
                                  UNITED STATES MAGISTRATE JUDGE